# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

D.T., *a minor who sues by and through* :
*his father and next friend,* M.T.,
                                        :

       Plaintiff,

                                            :

vs.                                          CA 10-0348-CG-C

                                            :

SHERIFF'S DEPARTMENT OF
BALDWIN COUNTY, et al.,            :

       Defendants.

## REPORT AND RECOMMENDATION

This cause is before the undersigned for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), on the second-amended complaint (*see* Doc. 1, SECOND AMENDED COMPLAINT), the motion to dismiss filed by defendants Sheriff's Department of Baldwin County and Sheriff Huey Mack (Doc. 4; *see also* Doc. 5) and the plaintiff's opposition (Doc. 19).[1] After consideration of the foregoing pleadings, it is the undersigned's recommendation that the motion to dismiss filed by the Sheriff's Department of Baldwin County and Sheriff Huey Mack (Doc. 4) be **GRANTED IN ITS ENTIRETY**.

---

[1] The undersigned has discerned no reason to await the moving defendants' reply before ruling on the pending motion to dismiss. (*See* Doc. 10 (ordering defendants to file their reply not later than August 23, 2010))

## FINDINGS OF FACT

1.      Plaintiff, a minor, originally filed on December 10, 2009, through his father and next friend, M.T., a two-count complaint against Baldwin County, the City of Bay Minette, Alabama, and numerous fictitious parties, arising out of his sexual and physical abuse at the hands of Jacques Mallory while he was detained in the Baldwin County Detention Center for a two-day period beginning on August 22, 2009. (*See* Doc. 1, COMPLAINT) Plaintiff amended his complaint on February 18, 2010, to add as parties defendant Sheriff Huey Mack, the Sheriff's Department of Baldwin County, and Wal-Mart Supercenter of Bay Minette. (*See id.*, AMENDED COMPLAINT) The complaint, as amended, asserted state-law negligence and wantonness claims against the City, County, Sheriff and Sheriff's Department and two separate claims against Wal-Mart. (*See id.*) Plaintiff filed his second amended complaint in the Circuit Court of Baldwin County, Alabama on July 6, 2010 and therein, for the first time, alleged claim(s) pursuant to 42 U.S.C. § 1983, that is, violation of his Fourteenth Amendment rights by Sheriff Huey Mack and the Sheriff's Department of Baldwin County. (*See id.*, SECOND AMENDED COMPLAINT; *compare id. with* Doc. 19, at 5)[2]

---

[2]      By this point in time, Baldwin County and the City of Bay Minette  were dismissed as parties. (Doc. 1, ¶ 3 ("On March 1, 2010, Defendants Baldwin County, Alabama and City of Bay Minette were dismissed as parties.")) Plaintiff continues to pursue two claims against Wal-Mart; however, those claims have no relevance to the pending motion to dismiss.

2. Based upon the § 1983 claims, the defendants removed the action to this Court on July 8, 2010. (Doc. 1) Looking solely at the second amended complaint,[3] the undersigned discerns the following relevant facts.

3. D.T., a slight-of-stature minor who possessed no criminal record, was arrested by Bay Minette police officers on August 22, 2009, for allegedly shoplifting items from the Wal-Mart Supercenter in Bay Minette, Alabama. (*See* Doc. 1, SECOND AMENDED COMPLAINT, at 3) D.T. was initially informed by police that he would be incarcerated for a few hours; however, he was placed in and remained incarcerated in the Baldwin County Detention Center for two days. (*Id.*)

---

[3] The undersigned has solely considered the facts set forth in plaintiff's second amended complaint; the "new" facts plaintiff has attempted to add to this case through his response in opposition to the motion to dismiss (*see* Doc. 19, at 6-12) have not been considered by the undersigned in this report and recommendation because plaintiff has neither requested (*see id.* (nowhere in his response does plaintiff request leave of the court to amend his complaint but, instead, he simply attempts to supplement his causes of action)) nor been granted leave to amend his complaint. Fed.R.Civ.P. 15(a)(2) ("In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave."); *see Wagner v. Daewoo Heavy Industries America Corp.,* 314 F.3d 541, 542 (11th Cir. 2002) ("A district court is not required to grant a plaintiff leave to amend his complaint sua sponte when the plaintiff, who is represented by counsel, never filed a motion to amend nor requested leave to amend before the district court."); *Long v. Satz,* 181 F.3d 1275, 1279 & 1279-1280 (11th Cir. 1999) ("Filing a motion is the proper method to request leave to amend a complaint. . . . A motion for leave to amend should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment. In this case, the plaintiff did not file a motion for leave to amend. The request for leave to amend was included in the memorandum she filed in opposition to the motion to dismiss. Furthermore, she failed to attach the amendment or set forth the substance of the proposed amendment. The plaintiff had ample time to file a motion for leave to amend but failed to do so. Failure to properly request leave to amend, when she had adequate opportunity and time to do so, precludes the plaintiff's argument on appeal that the district court abused its discretion by denying her leave to amend her complaint." (internal citations omitted)). In fact, the undersigned recommends that all such "facts" be **STRICKEN**.

4.     D.T. was placed in a cell with two other inmates and was told he would have to sleep on the floor. (*Id*.) While D.T. was placing his mat and personal belongings on the floor of the cell, Jacques Mallory entered the cell, picked up D.T.'s belongings, and started to take those items to his cell. (*Id*. at 4) The prison guard who had escorted D.T. to his cell intervened and told Mallory to return to D.T. his belongings; Mallory complied with this directive. (*Id*.) According to plaintiff, this unidentified prison guard "knew or should have known that there was [a] substantial risk of serious harm to D.T." at the hands of Mallory and yet "he acted with deliberate indifference by not providing D.T. . . . with any further safety or by advising D.T. . . . that [] Mallory could be a potential problem." (*Id*.)

5.     Sometime after the guard left, Mallory again entered D.T.'s cell and moved the minor's personal and sleeping items to the cell in which he resided. (*Id*.) Later still, Mallory was able to isolate D.T. during a lockdown period and it was at this time that Mallory sexually and physically abused D.T. (*Id*.) Mallory forced D.T. to engage in deviant sexual acts and he raped the minor. (*Id*.) During the prolonged assault, D.T. rang the cell's call button at least eight (8) times to obtain the presence of an officer; all calls were ignored by jail personnel. (*Id*. at 4-5) When D.T. finally escaped Mallory's clutches and reported the assault, the guards, on the one hand, treated the incident as "some sort of joke[]" (*id*. at 5) but, on the other hand, "forced" him "to provide a statement that was favorable to the guards[.]" (*Id*.) Moreover, one guard, Lieutenant Nolan, in conversations

with D.T.'s parents stated "that most of the prisoners enjoyed having the things done to them that were done to D.T." (*Id.*)

6.     D.T. asserts the following two claims against the Sheriff's Department of Baldwin County, Sheriff Huey Mack, and numerous unidentified fictitious parties:

**<u>FIRST CAUSE OF ACTION</u>**
**(Civil Action for the Deprivation of Rights – 42 U.S.C. § 1983)**

.     .     .

1.     The Plaintiff realleges and incorporates by reference each of the above preceding paragraphs with the same force and effect as if fully set out in specific detail herein.

2.     This count is brought against the individual Defendants in their ***individual capacities***.

3.     Detainees such as the Plaintiff who are entrusted to the care of the Sheriff and the Sheriff Deputies and personnel of the jail have a liberty interest in their personal safety and bodily integrity which is protected by the due process clause of the Fourteenth Amendment . . . .

4.     The employees of the Sheriff's Department of Baldwin County who were responsible for the care, well being and protection of D.T., a minor, and other named Defendants, while acting under color of state law, statute, ordinance, regulation, custom and usage, subjected D.T., a minor, to unequal protection under the law of the United States by failing to exercise due care and failing to protect him from assault and rape by another inmate at the Baldwin County Detention Center on August 22, 2009.

5.     Physical abuse may rise to the level of a constitutional violation, for purposes of the Section 1983 claim, and in making that determination, courts consider whether the abuse is literally shocking to the conscience. 42 U.S.C. § 1983.

6.     On the dates listed above, Sheriff Huey Mack and Defendants A, B, and/or C, D, E, and/or F, and G, H, and/or I, failed to adequately

safeguard D.T., a minor, failed to carry out their ministerial duties, physically abused D.T., a minor, and/or neglected D.T., a minor.

7.     The failure to protect the Plaintiff and to provide adequate security and care for him which resulted in all of the injuries listed above in the Statement of Facts, w[as] a result of the deliberate indifference of the Defendants to his safety and security.

8.     As a proximate result thereof, D.T., a minor, suffered injury and harm.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, The Sheriff's Department of Baldwin County, Huey Mack, A, B, and/or C, D, E, and/or F, and G, H, and/or I, for actual damages, general damages, and such other damages as allowed by the State of Alabama in an amount in excess of this Honorable Court's jurisdictional limit.

## SECOND CAUSE OF ACTION
### (Non-Compliance with Ministerial Duties and Checklist)

.          .          .

1.     The Plaintiff realleges and incorporates by reference each of the above preceding paragraphs with the same force and effect as [if] fully set out in specific detail herein.

2.     The individual Defendants [], sued in their ***individual capacities***, were responsible for following the rules, regulations, policies and/or procedures of the Department. They negligently and/or wantonly failed to follow these policies and procedures. They failed to use due care in carrying out their responsibilities. The acts and/or omissions constitute violations of ministerial rather than discretionary duties.

3.     The individual Defendants had the responsibility to follow the guidelines and the checklists for hiring and retention of employees and/or to insure that these policies were being followed by the Sheriff Deputies and jail personnel. The individual Defendants, sued in their ***individual capacities***, failed to follow these guidelines. These acts and omissions constitute violations of ministerial rather than discretionary duties.

4.     The Defendants negligently failed to supervise employees, negligently failed to inform employees of policies and procedures, negligently failed to require employees to follow policies and procedures, negligently failed to have supervisors properly train employees, [and] negligently failed to require employees to follow the policies and regulations.

5.     D.T., a minor, has been subjected to rape, physical abuse, neglect and mistreatment while being a detainee at the Baldwin County Detention Center.

6.     It is a violation of the policies and procedures at the Baldwin County Detention Center to physically abuse, neglect and/or mistreat a detainee.

7.     It is a violation of the policies and procedures of the Baldwin County Detention Center to act indifferent to abuse, neglect and/or mistreatment of a detainee.

8.     The Sheriff developed a very lax policy related to the employees carrying out their ministerial duties in following the set policies and procedures. The Sheriff allowed employees to violate rules and regulations and knew that the employees were not following applicable rules, policies, checklists, procedures, and/or regulations.

9.     The Defendants knew, or should have known, that employees were violating the very strict policies and procedures relating to the abuse of the detainees at the Baldwin County Detention Center. Due to lax enforcement by the Defendants, the practice was allowed to continue unabated.

10.     The Plaintiff seeks compensatory and punitive damages, fees, interest and costs against the individual Defendants.

11.     As a proximate result thereof, D.T., a minor, suffered injury and harm.

WHEREFORE, the premises considered, the Plaintiff demands judgment against the Defendants, The Sheriff's Department of Baldwin County, Huey Mack, A, B, and/or C, D, E, and/or F, and G, H, and/or I, for actual damages, general damages, punitive damages, and such other

damages as allowed by the State of Alabama in an amount in excess of this Honorable Court's jurisdictional limit. ***The Plaintiff does not seek monetary damages under the state law claims against the Sheriff Huey Mack or the individual Defendants sued in their official capacities. The only monetary damages sought are under statutory and state law claims against individual Defendants sued in their individual capacities, as well as attorney['s] fees, interest and costs***.

(*Id.* at 6-9 (emphasis supplied))

7.     Defendants Sheriff Huey Mack and the Sheriff's Department of Baldwin County filed their Rule 12(b)(6) motion to dismiss plaintiff's second amended complaint on July 15, 2010. (Doc. 4; *see also* Doc. 5) The plaintiff joined the issue on August 16, 2010. (Doc. 19)

## CONCLUSIONS OF LAW

### A.     Motion to Dismiss Standard.

1.     Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

2.    Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.*, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly,* 550 U.S. at 557, 127 S.Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim that has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id.* at \_\_\_, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id.* at \_\_\_, 129 S.Ct. at 1950-1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'").

### B.  <u>The Sheriff's Department of Baldwin County, Alabama</u>.

3.      The law is clear in the Eleventh Circuit that the Baldwin County Sheriff's Department "is not a legal entity and, therefore, is not subject to suit or liability under section 1983." *Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992); *see also McClure v. Houston County, Alabama*, 306 F.Supp.2d 1160, 1165 (M.D. Ala. 2003) (on summary judgment, plaintiff conceded her claims against the Houston County Sheriff's Department on the basis that it was not a legal entity subject to suit). This proposition of law has evolved in the § 1983 context  because "[u]nder Alabama law, a county sheriff's department lacks the capacity to be sued." *Dean, supra,* 951 F.2d at 1215, citing *White v. Birch*, 582 So.2d 1085, 1087 (Ala. 1991). Indeed, in *King v. Colbert County*, 620 So.2d 623, 626 (Ala. 1993), Alabama's Supreme Court upheld the granting of summary judgment in favor of the Colbert County Sheriff's Department on plaintiff's state-law negligence and wantonness claims on the basis that this defendant "is not a legal entity[] [and,] [t]herefore, one cannot maintain an action against it."

4.     In light of the foregoing, it is the undersigned's recommendation that plaintiff's § 1983 claims asserted against the Baldwin County Sheriff's Department be **DISMISSED WITH PREJUDICE**, as conceded by plaintiff (Doc. 19, at 5 ("Agreed, Baldwin County Sheriff's Department is due to be dismissed.")).

### C.     § 1983 Claim Against Sheriff Huey Mack and Qualified Immunity.[4]

5.     Plaintiff's final claims against identified Baldwin County defendants are those asserted against Sheriff Huey Mack in his individual capacity pursuant to 42 U.S.C. § 1983. (*Compare* Doc. 1, SECOND AMENDED COMPLAINT, at 6-9 *with* Doc. 19, at 5) D.T. contends that Mack and other unidentified employees of the Baldwin County Sheriff's Department failed to exercise due care and protect him from assault and rape by another inmate Jacques Mallory in violation of the due process clause of the Fourteenth Amendment to the United States Constitution (Doc. 1, SECOND AMENDED COMPLAINT, at 6-9). *See Gross v. White*, 340 Fed.Appx. 527, 529 n.1 (11th Cir. 2009) ("The district court correctly noted that because Gross was a pretrial detainee at the time of the assault . . ., his claims actually invoke the protections of the Fourteenth

---

[4]     Plaintiff makes clear in his response to the motion to dismiss that he raises no state law claim (Doc. 19, at 5 ("The complaint against Sheriff Huey Mack is under Title 42 U.S.C. § 1983, in his individual capacity. The Defendant claims that Huey Mack was acting 'in the line and scope of his employment' and therefore not subject to any state law claim.")) and that the sheriff is being sued solely in his individual capacity, not his official capacity (*id.* ("Sheriff Mack is not being sued in his 'official capacity' but rather in his 'individual capacity'.")); therefore, this Court need not concern itself with whether Mack is entitled to absolute immunity from state-law claims (since there are none) and Eleventh Amendment immunity (since there are no "official capacity" claims for damages). Rather, this Court need only direct its attention to whether Sheriff Mack is entitled to qualified immunity from suit.

Amendment right to due process rather than the Eighth Amendment right to be free from cruel and unusual punishment. . . . As the district court also observed, however, the distinction makes no difference in the analysis of Gross' claims.");[5] *Marsh v. Butler County, Alabama*, 268 F.3d 1014, 1024 n.5 (11th Cir. 2001) ("We have said that the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments.").

6.     To counter plaintiff's § 1983 claim(s), Mack raises the defense of qualified immunity which affords complete protection to "government officials performing discretionary functions from suit in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (internal quotation marks and citations omitted).

> The purpose of this immunity is to allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating [] federal law. Because qualified immunity is an entitlement not to stand trial or face the other burdens of litigation, questions of qualified immunity must be resolved at the earliest possible stage in litigation. It is therefore appropriate for a district court to grant the defense of qualified immunity at the motion to dismiss stage[6] if the

---

[5]     "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2.

[6]     "In examining the factual allegations in the complaint, we must keep in mind the heightened pleading requirements for civil rights cases, especially those involving the defense of qualified immunity. The complaint must allege the relevant facts with some specificity. More than mere conclusory notice pleading is required. A complaint will be dismissed as insufficient where the allegations it contains are vague and conclusory. Moreover, in reviewing a motion to
(Continued)

> complaint fails to allege the violation of a clearly established constitutional right.

*Id.* (internal citations and quotation marks omitted; footnote added); *see also Saucier v. Katz,* 533 U.S. 194, 200-201, 121 S.Ct. 2151, 2155-2156, 150 L.Ed.2d 272 (2001) ("Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation.") (emphasis in original; internal citations and quotation marks omitted)); *Marsh, supra*, 268 F.3d at 1022 & 1023 ("Once the affirmative defense of qualified immunity is advanced, the allegations of the complaint take on great importance in a lawsuit. 'Unless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery.' . . . We apply the qualified immunity defense to dismiss a complaint at the

---

dismiss, we need only accept well-pleaded facts and reasonable inferences drawn from those facts. Unsupported conclusions of law or of mixed fact and law have long been recognized not to prevent a Rule 12(b)(6) dismissal. We must also keep in mind the fact that we generally accord official conduct a presumption of legitimacy." *Id.* at 1235 (internal citations, quotation marks, brackets, and ellipses omitted).

12(b)(6) stage where, (1) from the face of the complaint, (2) we must conclude that (even if a claim is otherwise sufficiently stated), (3) the law supporting the existence of that claim-given the alleged circumstances-was not already clearly established, (4) to prohibit what the government-official defendant is alleged to have done, (5) before the defendant acted.").

7.      To be entitled to qualified immunity, the defendant invoking it, here Mack, "'must first prove that he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred.'" *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002), quoting *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). "In making this determination, '[i]nstead of focusing on whether the acts in question involved the exercise of actual discretion, we assess whether they are of a type that fell within the employee's job responsibilities. Our inquiry is two-fold. We ask whether the government employee was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize. . . . In applying each prong of this test, we look to the general nature of the defendant's action, temporarily putting aside the fact that it may have been committed for an unconstitutional purpose, in an unconstitutional manner, to an unconstitutional extent, or under constitutionally inappropriate circumstances." *O'Rourke v. Hayes*, 378 F.3d 1201, 1205 (11th Cir. 2004), quoting *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1266 (11th Cir. 2004). There can be no question under this test but that Mack was acting within the scope of his discretionary authority at all times relevant to the events alleged in the

second amended complaint, plaintiff conceding as much (Doc. 19, at 8 ("As Sheriff of Baldwin County it is within Sheriff Mack's discretionary authority to establish and carry out policies at the county jail.")).

8.     Mack having established that he was acting within the scope of his discretionary authority, the burden shifts to D.T. to demonstrate that Mack is not entitled to qualified immunity. *See O'Rourke, supra*, 378 F.3d at 1206 ("Once a government official demonstrates that he is potentially entitled to qualified immunity, the burden shifts to the plaintiff to demonstrate that the official is not actually entitled to it."). In *Saucier v. Katz, supra,* the Supreme Court set forth the following two-part analysis for determining whether qualified immunity is appropriate: first, considering the facts in the light most favorable to the plaintiff, do the facts show that the defendant's conduct violated a constitutional right; and, second, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." 533 U.S. at 200 & 201, 121 S.Ct. at 2155 & 2156; *see also Vinyard, supra*, 311 F.3d at 1346 ("The Supreme Court has set forth a two-part test for the qualified immunity analysis. 'The threshold inquiry a court must undertake in a qualified immunity analysis is whether [the] plaintiff's allegations, if true, establish a constitutional violation.' If a constitutional right would have been violated under the plaintiff's version of the facts, 'the next, sequential step is to ask whether the right was clearly established.'" (internal citations omitted)). Recently, however, in *Pearson v. Callahan*, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009), the Supreme Court concluded

that while the sequence set forth in *Saucier* "is often appropriate, it should no longer be regarded as mandatory." *See also id.* ("The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand.").

9.      While the defendants take the position in this case that the Supreme Court determined in *Ashcroft v. Iqbal, supra,* that there no longer exists "supervisory liability" claims in § 1983 suits, *see* 129 S.Ct. at 1949 ("In a § 1983 suit or a *Bivens* action-where masters do not answer for the torts of their servants-the term 'supervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct. In the context of determining whether there is a violation of clearly established right to overcome qualified immunity, purpose rather than knowledge is required to impose *Bivens* liability on the subordinate for unconstitutional discrimination; the same holds true for an official charged with violations arising from his or her superintendent responsibilities."), they also recognize that the Eleventh Circuit, two months after *Iqbal*, continued to analyze § 1983 claims against a sheriff in the context of supervisory liability, *see Gross, supra*, 340 Fed.Appx. at 530-531.[7]

---

[7]      Accordingly, this Court will continue to address this issue as the Eleventh Circuit did in *Gross*.

> [S]upervisory liability under § 1983 occurs either when the supervisor
> personally participates in the alleged unconstitutional conduct or when
> there is a causal connection between the actions of a supervising official
> and the alleged constitutional deprivation. The necessary causal connection
> can be established when a history of widespread abuse puts the responsible
> supervisor on notice of the need to correct the alleged deprivation, and he
> fails to do so. Alternatively, the causal connection may be established when
> a supervisor's custom or policy [] results in deliberate indifference to
> constitutional rights or when facts support an inference that the supervisor
> directed the subordinates to act unlawfully or knew that the subordinates
> would act unlawfully and failed to stop them from doing so. The standard
> by which a supervisor is held liable in his individual capacity for the
> actions of a subordinate is extremely rigorous.

*Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (internal citations, quotation marks, ellipses, and brackets omitted); *see also Gross, supra,* 340 Fed.Appx. at 530-531 ("Supervisory officials cannot be held liable under § 1983 for the unconstitutional actions of their subordinates based on respondeat superior liability. The standard by which a supervisor is held liable in his individual capacity for the actions of a subordinate is extremely rigorous. A claim based on supervisory liability must allege that the supervisor: (1) instituted a custom or policy which resulted in a violation of the plaintiff's constitutional rights; (2) directed his subordinates to act unlawfully; or (3) failed to stop his subordinates from acting unlawfully when he knew they would." (internal citations and quotation marks omitted)).

10.     While the face of D.T.'s § 1983 claim arguably alleges that Mack failed to protect him from Mallory (*see* Doc. 1, Second Amended Complaint, at 7 ("On [August 22, 2009], Sheriff Huey Mack and Defendants A, B, and/or C, D, E, and/or F, and G, H, and/or I, failed to adequately safeguard D.T., a minor, failed to carry out their ministerial

duties, physically abused D.T., a minor, and/or neglected D.T., a minor.")), nowhere in the second amended complaint does plaintiff allege that Mack directly participated in any acts at the detention facility or was even aware that D.T. was incarcerated in the facility for the two-day period in August of 2009 and, therefore, the undersigned concludes that plaintiff is not contending that Sheriff Mack personally participated in the alleged unconstitutional conduct which led to his sexual and physical abuse at the hands of Mallory. Instead, the undersigned reads the second amended complaint as alleging that there exists a causal connection between Mack's actions and his sexual and physical assault at the hands of Mallory based upon that failure to properly supervise and train the guards working at the detention facility on the two days he was incarcerated therein. (*Compare id*. at 6-7 *with id*. at 7-9)

11. Looking at the three ways by which a causal connection can be established, the complaint contains no allegations that there was a history of widespread abuse by and between inmates incarcerated at the Baldwin County Detention Center such that Mack was placed on notice of the need to protect the inmates housed there from one another in a manner different from that which was employed.[8] Moreover, plaintiff does not

---

[8]  This one incident of D.T. being sexually and physically abused, standing alone, is not sufficient to establish widespread abuse. *Compare Gross, supra,* 340 Fed.Appx. at 531 ("An allegation about an isolated occurrence is not enough to state a claim for deliberate indifference[.]") *with West v. Tillman,* 496 F.3d 1321, 1329 (11th Cir. 2007) ("'The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.'"); *cf. Williams v. Limestone County, Alabama*, 198 Fed.Appx. 893, 897 (11th Cir. 2006) ("Williams fails to provide any evidence-or even allege-that there was a history or pattern of jail personnel's (Continued)

sufficiently allege facts showing that Mack implemented any affirmative policy or custom that played a role in his sexual and physical assault at the hands of Mallory[9] nor does he allege that Mack directed the facility guards to commit constitutional violations or not to monitor inmates or respond to the call button. Finally, the complaint does not make any allegations that Mack had knowledge of the unidentified guards' failure to monitor inmates and respond to the call button or that the unidentified guards had a past history, or even a prior incident, of failing to monitor inmates and failing to respond to the call button. Therefore, plaintiff has failed to establish the necessary causal connection

---

deliberate indifference to inmates' serious medical needs that would render obvious the need for additional or different medical training. In fact, Williams cites only the incident involving himself. On these facts, this is insufficient to establish Sheriff Blakely's liability for a failure to train the jail staff.").

[9] In this regard, plaintiff merely makes the conclusory statements that Mack "developed a very lax policy related to the employees carrying out their ministerial duties in following the set policies and procedures[,]" and that he "allowed employees to violate rules and regulations and knew that the employees were not following applicable rules, policies, checklists, procedures, and/or regulations." (Doc. 1, Second Amended Complaint, at 8) Unfortunately for plaintiff, he does not identify any specific rules, policies, checklists, procedures, and/or regulations which Mack's employees were not following and over which the sheriff established a lax policy to make sure his employees followed; therefore, such conclusory statements are insufficient to state a viable claim against Mack. *See Iqbal, supra*, 129 S.Ct. at 1949 & 1950 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual development.' . . . Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." (internal citations omitted)). The conclusory allegations in the second amended complaint in this case represent the textbook example for why the doors of discovery should not be opened for plaintiff against Sheriff Mack.

between Mack and the unconstitutional conduct at issue for supervisory liability to be imposed such that the undersigned need recommend that the Court find that plaintiff has failed to allege that Mack committed a constitutional violation.[10] *See Cottone, supra,* 326 F.3d at 1362 (finding plaintiffs' failure to establish the necessary causal connection between the supervisors and the unconstitutional conduct in issue for supervisory liability to be imposed constitutes a failure to allege that those supervisory officials committed a constitutional violation). Accordingly, Mack is entitled to qualified immunity and

---

[10] Because the complaint fails to allege a constitutional violation committed by Mack, this Court "need not reach the 'clearly established law' prong of the qualified immunity inquiry with respect to supervisory liability." *Cottone, supra,* 326 F.3d at 1362 (citation omitted).

In his brief in opposition to the motion to dismiss, plaintiff takes the position that he has alleged conditions (*see* Doc. 19, at 7-9) "that, in the light of the already clearly established law at the time of the incident, obviously amounted to cruel and unusual punishment under the Eighth Amendment." *Marsh, supra,* 268 F.3d at 1028 (citation omitted). The undersigned disagrees with plaintiff's argument in this regard, however, because the second amended complaint does not contain allegations of conditions at the Baldwin County Detention Center which come anywhere close to the allegations of conditions found in the *Marsh* decision to present "an objectively substantial risk of serious harm-including the risk of inmate-on-inmate attacks-to inmates[,]" thereby violating "the Eighth Amendment's requirement 'that inmates be furnished with basic human needs, one of which is "reasonable safety."'" *Id.* at 1029 (citations omitted). Moreover, the second amended complaint simply contains no non-conclusory allegations that Mack was subjectively aware of the substantial risk to inmate safety at the Baldwin County Detention Center. *See Marsh, supra.* Therefore, coming at the issue from the same direction as plaintiff, the undersigned finds that plaintiff has not sufficiently alleged that Sheriff Mack violated his Fourteenth Amendment rights because he has not adequately alleged that an objective, substantial risk of serious harm to inmates existed nor has he adequately alleged that Mack was subjectively aware of the risk. *Cf. Marsh*, 268 F.3d at 1030 ("We conclude that Plaintiffs adequately allege 1) an objective, substantial risk of serious harm to inmates existed, 2) the Sheriff was subjectively aware of this risk, 3) the Sheriff responded in an objectively unreasonable way to this known risk, and 4) the constitutional violation caused Plaintiffs' injuries. Plaintiffs, therefore, allege sufficiently that Sheriff Harris violated their Eighth Amendment rights.").

plaintiff's § 1983 claims against the sheriff in his individual capacity should be **DISMISSED**.

## CONCLUSION

In light of the foregoing, the undersigned recommends that the motion to dismiss filed by defendants Sheriff Huey Mack and the Sheriff's Department of Baldwin County (Doc. 4) be **GRANTED IN ITS ENTIRETY** and that plaintiff's claims asserted against the moving defendants be **DISMISSED**.

The instructions which follow the undersigned's signature contain important information regarding objections to the report and recommendation of the Magistrate Judge.

**DONE** this the 19th day of August, 2010.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND
RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND
FINDINGS CONCERNING NEED FOR TRANSCRIPT**

l.      *Objection*.  Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court.  Failure to  do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge.  *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a 'Statement of Objection to Magistrate Judge's Recommendation' within ten days[11] after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.      *Transcript (applicable Where Proceedings Tape Recorded)*.  Pursuant to 28 U.S.C. § 1915 and FED.R.CIV.P. 72(b), the Magistrate Judge finds that the tapes and original records in this case are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

---

[11]      Effective December 1, 2009, the time for filing written objections was extended to "14 days after being served with a copy of the recommended disposition[.]" Fed.R.Civ.P. 72(b)(2).